IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDRE W. WILLIAMS, SR.,                  §
                                         §
              Plaintiff,                 §
                                         §
V.                                       §        No. 3:16-cv-2943-L-BN
                                         §
WASTE MANAGEMENT, INC., ET AL.,          §
                                         §
              Defendants.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This action filed by a plaintiff proceeding *pro se* has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 10.

Defendants Waste Management of Texas, Inc., Louis Ramirez, Mark Johnson, and Lance Butler move for summary judgment as to Plaintiff Andre W. Williams, Sr.'s claims. *See* Dkt. Nos. 79, 80, & 81. Mr. Williams filed a response. *See* Dkt. Nos. 84, 85, & 86. Defendants filed a reply brief, *see* Dkt. No. 87, and moved for leave to file objections to – and a motion to strike – certain summary judgment evidence submitted by Mr. Williams, *see* Dkt. Nos. 88 & 90. The Court granted leave. *See* Dkt. No. 89. Mr. Williams filed a response. *See* Dkt. No. 91. And Defendants filed a reply brief. *See* Dkt. No. 92.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the Court

should deny the motion to strike – but consider the grounds raised therein as objections to Mr. Williams's evidence – and grant the motion for summary judgment, dismissing this action with prejudice.

## Applicable Background

Mr. Williams alleges claims for discrimination based on race, age, and disability and retaliation under multiple federal laws. *See generally* Dkt. No. 3.

The unverified *pro se* complaint sets out that Mr. Williams began working for Waste Management in Oklahoma City in May 2012 in "the residential Bulk Department" and that, there, he was subjected to racial slurs. *Id.* at 1. In March 2013, he transferred to Lewisville, Texas as a "Roll Off Driver." *Id.* He claims that, in that capacity, his "scheduled hours varied between 4:30am-8pm, 6pm-5am." *Id.* And he alleges that, approximately one month after the transfer, he contacted his supervisor regarding his desire to work from 6:00 a.m. to 2:00 p.m. and to drive an automatic truck. *See id.*

After a temporary assignment in Oklahoma, where he asserts that he worked as a Roll-Off driver from 6:00 a.m. to 2:00 p.m., Mr. Williams alleges that he returned to Lewisville in June 2013 and informed his supervisor, Henry Short, "of the comparison of the different hours [he] worked and how [he] was affected." *Id.* at 2 (further alleging that he experienced an improvement in his health while working a different scheduled in Oklahoma). Mr. Williams alleges that Mr. Short told him he needed to report "to Concentra; the company doctor and medical facility as part of a DOT procedure" and also told him they would discuss his transferring to residential.

*Id.*

Mr. Williams admits that on June 19, 2013, he

was temporarily disqualified from working and taken out of service by the company doctor at the Concentra medical facility. The company doctor requested medical information from my treating physician in addition to a letter from physician stating the effects of the medication I was taking and whether or not it would affect my ability to drive. The requests from the company doctor were based upon referencing to DOT regulations.

*Id.*

This admission is further explained in Defendant Louis Ramirez's declaration,

submitted in support of the motion for summary judgment:

Williams returned to Lewisville on Saturday, June 15, 2013. Shortly after he returned, Williams met with Henry Short, then-Roll-Off Route Manager. During that meeting, Williams told Short that he was having difficulties working the 4:30 am start time because of the sleep medication (Zolpidem, or generic Ambien) he was taking, and he requested a 6:00 am shift start time. This was the first time that any of the Lewisville management team learned that Williams was taking sleep medication.

Short reported this information via email to Lance Butler, then-District Manager, Donald Defazio, then-Operation Manager, Raymond Reilly, then-Driver Trainer, and Chuck Haraf, Area Safety Manager. Short instructed Williams to report to Concentra, Waste Management's third party medical provider, to determine whether he was medically approved to perform his job as a driver.

Williams reported to Concentra later that week. Based on the information provided by Williams, Concentra temporarily disqualified Williams from returning to work until his doctor provided information regarding the effects of his sleep medication on his ability to perform his job duties, which included driving a heavy duty vehicle.

During this time, Short applied for and was selected for a driver position in the Dallas area. Waste Management then selected Mark Johnson for the Roll-Off Route Manager position in Lewisville.

When Williams notified Short that Concentra had temporarily disqualified him, Short reported this information back to Lewisville management, including Johnson.

On Thursday, June 28, 2013, Williams' doctor issued a letter

-3-

stating that Williams' medication, when taken as directed, would not affect Williams' ability to work.

On or around July 9, 2013, Butler contacted me to discuss Williams' return to work. I learned that although Williams was released to return to work on June 28th, he had not yet reported to work. I also learned that Williams was requesting a 6:00 am shift start time. I discussed with Butler the option of transferring Williams to a Residential position because the Residential shift started at 6:00 am. Based upon information and belief, this information was previously communicated to Williams by Johnson.

On July 11, 2013, I met with Williams, along with Butler, Johnson, and Roberts. During the meeting, I explained to Williams that Waste Management was prepared to grant his request to move to a 6:00 am start time by transferring him to a Residential driver position. I reiterated that the Residential pay scale was lower than Roll-Off, but that Waste Management would adjust the rate for Williams' tenure and experience (*e.g.* Williams would be paid more than the new hire rate). I presented Williams with a letter outlining the terms of the position and explained that if he did not accept the offer, he was going to remain employed as a Roll-Off driver with at 4:30 am start time.

During the July 11th meeting, Williams also discussed the fact that his mother was ill and he wanted to spend more time with her. In response, I informed Williams that he may be eligible for leave under the Family Medical Leave Act ("FMLA") to care for his mother. Williams also asked whether he would be able to transfer back to Oklahoma. I informed Williams that in order to be eligible to transfer, he needed to be actively working and in good standing.

At the conclusion of the meeting, Williams verbally declined the offer to transfer to Residential, and stated that he wanted to consider his options further.

Dkt. No. 81 at 5-6, ¶¶ 13-22.

After the July 11 meeting, Mr. Williams alleges that he continued to communicate with Waste Management about returning to work, *see* Dkt. No. 3 at 5, until, he further alleges, he was instructed to return to work on July 22, 2013 and ultimately showed up to work that day at 4:15 a.m., *see id.* at 5 (alleging that, when he arrived, "there was no truck for me to drive, no work phone that is usually supplied,

-4-

no tablet that is needed for work to perform the duties, and Mark Johnson would not acknowledge that I was there or come see me, yet Mark new to expect me that Monday morning. In fact, Mark avoided me and sent an employee/individual of the company to inform me that he got busy and would have to get with me later. I waited for Mark I searched in the areas that I was authorized to be in and since I could not locate him as we have always done I left him a note that I was there and I would be waiting sitting outside in my vehicle because that early in the morning very few people are there and it was very awkward to be sitting around in an empty office. I went back inside the building for I waited nearly 3 hours still Mark was not being found another working group with coming in I made a search for Mark since he could not be located he had my note he could call me and I left and went home.").

Whether Mr. Williams showed up for work on July 22, 2013 is contested by Defendants' summary judgment evidence. *See, e.g.,* Dkt. No. 81 at 7 (Ramirez Decl.), ¶¶ 30, 31, & 32 ("Williams responded with an email to me later in the evening on July 20th. He again explained that he wanted clarity regarding his demands, and accused me of being 'evasive' and of 'avoiding' 'concrete answers' to his questions. At no point in his email did Williams express any intention of returning to work on July 22nd as directed. On July 22, 2013, Johnson informed me that Williams had not reported to work. Johnson informed me again on July 23 and 24 that Williams had not reported to work. These absences were designated as no call/no show occurrences under Waste Management's policies. Because Williams incurred three consecutive no call/ no show occurrences, he was considered to have voluntarily terminated his employment due to

job abandonment as of July 25, 2013.").

Mr. Williams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in July 2013, alleging age and disability discrimination; that charge was subsequently amended, but the bases for the alleged discrimination was never expanded. *See* Dkt. No. 81 at 104-18.

Liberally construed, through this action, Mr. Williams asserts claims under Title VII of the Civil Rights Act of 1964, as amended (race discrimination and retaliation); 42 U.S.C. § 1981 (race discrimination and retaliation); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA") (age discrimination and retaliation); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") (disability discrimination and retaliation); and (possibly) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* (the "RA") (disability discrimination and retaliation).

On August 9, 2018, the Court granted Defendants' Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings as to Mr. Williams's Title VII, ADEA, ADA, and RA claims against the individual defendants – Ramirez, Johnson, and Butler – but allowed to proceed any Section 1981 claims asserted against those defendants. *See Williams v. Waste Mgmt., Inc.*, No. 3:16-cv-2943-L-BN, 2018 WL 3803917 (N.D. Tex. June 29, 2018), *rec. accepted*, 2018 WL 3769852 (N.D. Tex. Aug. 9, 2018); see also Dkt. Nos. 72 & 77.

## Legal Standards and Analysis

I.    <u>Summary Judgement Standards</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the

pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation

marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either

because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he traditional leniency afforded to a pro se plaintiff does not excuse [Mr. Williams] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices,"

-10-

*id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).

That said, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

II.   <u>Motion to Strike</u>

"A party properly supports a fact by citing to competent summary judgment evidence, but unauthenticated documents are not competent evidence." *Garcia v. U Pull it Auto & Truck Salvage, Inc.*, No. 3:14-cv-3655-BN, 2016 WL 427382, at *1 (N.D. Tex. Feb. 4, 2016) (citing FED. R. CIV. P. 56(c)(1); *King*, 31 F.3d at 346 (5th Cir. 1994)). Thus, "'[a]dequate summary judgment evidence'" includes "[d]eclarations and verified pleadings that are dated and made on penalty of perjury." *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (quoting *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per curiam)). And, to be competent (or adequate) summary judgment evidence, declarations and affidavits must "be made on personal knowledge, set out admissible facts, and show that the [declarant or] affiant is competent to testify." *Joe Hand Promotions, Inc. v. Tequila Nights Private Club, Inc.*, No. 3:13-cv-1986-O-BN, 2014 WL 4102494, at *4 (N.D. Tex. Aug. 20, 2014) (citing FED. R. CIV. P. 56(c)(4)); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-92 (5th Cir. 1991).

Here, the *pro se* complaint is not verified. *See* Dkt. No. 3. Defendants support

their motion for summary judgment with declarations made under penalty of perjury and authenticated documents. *See, e..g,* Dkt. No. 81 at 3-122 & 541-42; *see also North Trade U.S. Inc. v. Guinness Bass Import Co.*, Civil 3:03CV1892 (CFD)(TPS), 2006 WL 2263885, at *2 (D. Conn. Aug. 7, 2006) ("In certain circumstances, it is appropriate for attorneys to submit personal affidavits in support of their motions for summary judgment. Counsel may present admissible evidence in an affidavit where the evidence relates to items in the case, such as items in the record or items produced in discovery." (citation omitted)). And Mr. Williams supports his opposition to the motion for summary judgment through an unverified grouping of documents that appears to include at least some excerpts from discovery produced in this case. *See* Dkt. No. 85.

Defendants object to – and move to strike – portions of Mr. Williams's evidentiary submission, arguing that "a number of documents [therein] contain handwritten comments that constitute inadmissible hearsay and/or contain improper legal conclusions." Dkt. No. 90. But the Court need not strike this evidence, as the undersigned will address what consideration, if any, and what weight, if any, the Court should afford the challenged evidence – as well as all evidence submitted by the parties. The Court should therefore deny the motion to strike as submitted but treat it as an objection accounted for in these findings, conclusions, and recommendation. *See, e.g., Lewis v. LSG Sky Chefs*, No. 3:14-cv-3107-M-BN, 2016 WL 6902546, at *5 (N.D. Tex. Oct. 26, 2016), *rec. accepted*, 2016 WL 6905960 (N.D. Tex. Nov. 22, 2016).

III.   Unexhausted Claims

Defendants move for summary judgment on their affirmative defense that,

because Mr. Williams failed to administratively exhaust his Title VII, ADEA, ADA, and RA retaliation claims and his Title VII race discrimination claim, the Court should dismiss those claims.

While a statute's "administrative exhaustion requirement is not a jurisdictional bar to suit," *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 306 (5th Cir. 2018) (discussing Title VII), that "does not mean that this requirement should be ignored," *id.* at 307.

> "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted. For this reason, Title VII requires administrative exhaustion.

*Id.* (quoting *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012)); *see also, e.g., Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) ("It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted [her] administrative remedies by filing a charge of discrimination with the EEOC." (citations omitted)).

Defendants assert as an affirmative defense that Mr. Williams's claims in this lawsuit "exceed the scope of, or are inconsistent with, the Charge(s) of Discrimination he filed." Dkt. No. 8, ¶ 5; Dkt. No. 30, ¶ 5; Dkt. No. 33, ¶ 5.

> In determining whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788-89. To balance these considerations, "[courts in this circuit interpret] what is properly embraced in review of a Title-VII claim

somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017).

These standards apply equally to claims under similar statutes, such as claims for retaliation under the ADEA, *see, e.g., Horton v. CCA Props. of Am., LLC*, No. 12-20404, 2013 WL 2248033, at *6 (5th Cir. May 8, 2013) (per curiam), and claims for retaliation under the ADA, *see, e.g., Huff v. DRE Mgmt., Inc.*, No. 3:12-cv-414-B, 2012 3072389, at *3 (N.D. Tex. July 30, 2012); *see also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (observing that the RA is operationally identical to the ADA, in that both statutes address discrimination against those with disabilities, but, while the ADA is limited to public entities, including private employers, the RA extends to programs or activities that, though private, receive federal funding).

In *Patton*, the Fifth Circuit considered the charge together with the complainant's intake questionnaire. *See* 874 F.3d at 443. And, even if the Court does so here, none of the EEOC documents that Mr. Williams submitted, included in Defendants' summary judgment evidence with a records certification, could reasonably have been expected to lead to either an EEOC investigation into racial discrimination or one into retaliation – of any kind. *See* Dkt. No. 81 at 106 (checking the boxes on the intake questionnaire for age and disability and alleging that he was "told if I was [too] 'old' to work hours or perform the job, I should consider working elsewhere"); *id.* at 107

-14-

(checking a box in the intake questionnaire indicating "No disability but the organization treats me as if I am disabled" and alleging that he requested assistance to allow him to "begin work 1 ½ hours later, and/or reduce extended work day to 8-9 hours daily"); *id.* at 109-10, 112-13 (charge and amended charge specifying a discrimination action under the ADEA based on age and under the ADA based on disability and alleging that Mr. Williams was "told by [a supervisor] that if [he] was [too] old to work hours or perform the job, [he] should consider working elsewhere or in another line of work" and was "denied an accommodation to work the hours of 6:00 a.m. to 2:00 p.m."); *see also id.* at 104 (EEOC records certification for Mr. Williams's charge file).

Therefore, drawing all reasonable inferences in favor of Mr. Williams, Defendants have carried the heavy burden of showing that beyond peradventure there are no genuine and material fact disputes on this affirmative defense, entitling them to summary judgment as a matter of law as to their defense, and requiring that the Court dismiss Mr. Williams's Title VII, ADEA, ADA, and RA retaliation claims and his Title VII race discrimination claim for his failure to administratively exhaust those claims.

IV.    Remaining Claims

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, in the absence of direct evidence of employment discrimination and retaliation, the Court, at summary judgment, analyzes those claims under the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first establish a prima facie case of discrimination or retaliation before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see also, e.g., Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) ("Claims of racial discrimination based on circumstantial evidence under § 1981 are analyzed under the familiar *McDonnell Douglas* burden-shifting analysis." (footnoted omitted)); *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015) ("Section 1981 retaliation claims are evaluated under the familiar three-part test of *McDonnell Douglas* ...." (citation omitted)); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (per curiam) (holding that the same framework is applicable to non-direct evidence claims under the ADEA).

### A.    Section 1981 Racial Discrimination and Retaliation [All Defendants]

Mr. Williams's failure to administratively exhaust a racial discrimination claim does not prevent the Court from considering that claim under Section 1981. *See, e.g.. O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016) ("Section 1981 claims are governed by the same standards as Title VII, except that Section 1981 does not require exhaustion of administrative remedies." (citing *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015) (per curiam))); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) ("This Court considers claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis."); *see also Bhatti v. Concepts Am. Inc.*, No. 3:14-cv-3445-L, 2016 WL 3880747, at *7 (N.D. Tex. July 18, 2016) ("'Although § 1981 does not itself use the word "race," the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts.' *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). At issue in Defendants' summary judgment motion is [Mr. Williams's] ability 'to make and enforce contracts' on nondiscriminatory terms. 42 U.S.C. § 1981(a).").

In his unverified complaint and his briefing, Mr. Williams asserts that racially-charged comments were directed at him while he was employed by Waste Management. *See, e.g.,* Dkt. No. 3 at 1 (While in Oklahoma, "[t]he environment at work supported several incidents of Racial Discrimination. I experienced and heard the use of the 'N' word. Descriptive words were often used such as 'monkeys', 'the bro's',

-17-

'anguses', 'baboon', 'jigaboos' , 'the kuntas' in reference to African-Americans. Racial slurs were also used towards Hispanics."); *id.* at 6 ("Race Discrimination: experiencing while in Oklahoma several racial comments and slurs; while in Texas, Lance Butler stating that for employment I could choose to go pick cotton."). First, these unverified allegations are not competent summary judgment evidence.

Moreover, "[t]o serve as direct evidence of an employer's discriminatory intent, a workplace comment must be 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [race] was an impermissible factor in the decision to terminate the employee.'" *Vital v. Nat'l Oilwell Varco*, Civ. A. No. H-12-1357, 2014 WL 4983485, at *18 (S.D. Tex. Sept. 30, 2014) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *see also Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (per curiam) ("Jones allegedly overheard Henson state that he wanted to 'get rid of all the blacks' and 'fire a bunch of niggers.' Henson also allegedly requested a staffing agency to send white drivers instead of black drivers. Both comments and the request reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination. The existence of racial animus scarcely appears in the form of statements that explicitly express an unlawful discriminatory intent. On such rare occasion, however, the plaintiff has brought forth evidence that clearly demonstrates an employer's discriminatory motive for its adverse employment action without any additional inferences or presumptions required by the court." (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996))).

-18-

"With no direct evidence of discriminatory intent, the analysis moves to the *McDonnell Douglas* burden-shifting framework," *Vital*, 2014 WL 4983485, at *19, under which "a plaintiff must first set forth a prima facie case of discrimination," *Morris*, 827 F.3d at 400 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)).

> To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." With respect to the "similarly situated employees" requirement, "a plaintiff must show that he was treated less favorably than others 'under nearly identical circumstances.'"

*Id.* at 400-01 (footnotes omitted).

Although Defendants argue that Mr. Williams's failure to report to work disqualified him from his position as a Roll-Off driver, *see, e.g.,* Dkt. No. 80 at 26-27 – a position commonly staked in the ADA context that may have "some merit" as to racial discrimination, *Bates v. Powerlab, Inc.*, No. 3:97-cv-2551-P, 1998 WL 292370, at *3 (N.D. Tex. May 18, 1998) ("Defendant asserts that Plaintiff is unable to demonstrate a prima facie case for race discrimination under Title VII because he was not qualified for the position since he did not attend work. The Court agrees with Defendant that attendance is, obviously, a necessary requirement for a job. Although the Court finds that Defendant's argument has some merit, the Court will assume for purposes of this Order that Plaintiff met the minimal qualifications for the job.") – even if the Court accepts that Mr. Williams has established the first three prima-facie-case requirements

– that he, as "a member of a protected class" who "was qualified for the position at issue," suffered an adverse employment action – Mr. Williams still has not established the fourth requirement by showing that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

He asserts that he was replaced by Herman Howze and that he was treated less favorably than two other drivers – Roy Nelson and Jim Pearson. *See, e.g.,* Dkt. No. 84 at 13 & 19-20. But he fails to provide competent summary judgment evidence to show that any of these alleged comparators are individuals of a different race than him "under nearly identical circumstances" who were treated more favorably. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *see also Wright v. Chevron Phillips Chem. Co., L.P.*, 734 F. App'x 931, 934 (5th Cir. 2018) (per curiam) ("Both the comparator and the conduct must be 'nearly identical' (except for the protected characteristic) to the person and situation in question yet the two yielded dissimilar results." (quoting *Outley*, 840 F.3d at 217-18 (quoting, in turn, *Lee*, 574 F.3d at 260))); *Noble v. Lear Siegler Svcs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (per curiam) (rejecting an African-American plaintiff's claim that he established this prima facie element by asserting that "five Caucasian men in his unit kept their jobs" because he failed to "show that these comparators were under 'nearly identical circumstances'" by presenting "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other information that would indicate that they were similarly situated" (quoting *Okoye v. Univ. of Tex. Houston Health Sci.*

*Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))); *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) ("An employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" (quoting *Lee*, 574 F.3d at 260)).

Next, "to establish a prima facie case of non-employment retaliation under § 1981, a plaintiff must show that: (1) he engaged in activity protected by § 1981; (2) he was subjected to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Zastrow*, 789 F.3d at 564 (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014); *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001)). And it appears that Mr. Williams's alleged protected activity is his bringing "to the attention of the defendant[s] their lack of concern for safety." Dkt. No. 84 at 20 ("Williams on July 20, 2013 emailed the defendants that he intended to voice his safety concern in other means. It is no secret that in the business of transportation that is mandated by the DOT federal regulation, OSHA would be the agency that handles a driver complaint or concerns the defendants report that Williams was terminated on July 24, 2013."). But Mr. Williams has not shown that safety complaints constitute an activity protected by Section 1981. *Cf. Washington v. M. Hanna Constr. Inc.*, 299 F. App'x 399, 401 (5th Cir. 2008) (per curiam) ("Because Title VII does not encompass violations of OSHA, *see* 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating on the basis of race, color, religion, sex or national origin), Plaintiff's

alleged reporting of M. Hanna to authorities for violating OSHA does not qualify as protected activity under Title VII, *see* § 2000e-3(a) (prohibiting discrimination for opposing any practice made unlawful by Title VII, or making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII).").

For these reasons, the Court should grant Defendants' motion for summary judgment as to Mr. Williams's Section 1981 claims and dismiss those claims with prejudice.

## B.    ADEA Age Discrimination [Waste Management]

The ADEA "prohibits an employer from discharging an employee on account of that employee's age." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *see also* 29 U.S.C.A. § 623(a)(1). Evidence produced for an ADEA claim is analyzed under a burden-shifting framework. *See id.* (citation omitted). And,

> [u]nder *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.

*Id.*

In his verified EEOC charges, Mr. Williams alleges that a ageist comment was made by Mark Johnson, his then-supervisor, in July 2013 – that, "if [Williams] was too old to work hours or perform his job, [he] should consider working elsewhere or in another line of work." Dkt. No. 81 at 109. But Mr. Williams has not shown that this

stray remark is direct evidence of age discrimination. To do so – and thus defeat summary judgment on an age discrimination claim analyzed outside the *McDonnell Douglas* framework – he would have to show that Mr. Johnson's comment "serve[s] as sufficient evidence that by itself would allow a jury to find discriminatory motive" and, therefore, the comment itself is "not stray, but instead [is] tied to the adverse employment action at issue both in terms of when and by whom [it was] made." *Goudeau*, 793 F.3d at 475 (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (analyzing comments under the test set out in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996))).

The Court may, however, consider this comment in determining whether Mr. Williams has established the fourth prima-facie element. *See id.* ("In a circumstantial case like this one, in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a 'more flexible' standard." (citing *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012))). And, here, summary judgment evidence reflects that Mr. Williams was replaced by someone younger. *See* Dkt. No. 81 at 7 (Ramirez Decl.), ¶ 33 ("Herman Howze (African-American, age 48) was selected to replace Williams on or around August 19, 2013."). So the undersigned will accept for purposes of deciding this claim that Mr. Williams has established a prima facie case of age discrimination under the ADEA.

"If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Goudeau*, 793 F.3d at 474. And, if the employer meets this burden, the burden then

shifts back to the plaintiff/employee to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks omitted).

"'A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012) (per curiam) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). "But a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); emphasis in original). "The ADEA thus requires a showing of 'but-for' causation." *Goudeau,* 793 F.3d. at 475.

Waste Management has met its burden to establish, through competent summary judgment evidence, that Mr. Williams was terminated for a legitimate, nondiscriminatory reason – his incurring "three consecutive no call/no show occurrences," which Waste Management considered Mr. Williams's voluntarily abandoning his job. Dkt. No. 81 at 7, ¶ 32. And Mr. Williams has not submitted evidence to show that this reason is a pretext for age discrimination.

Waste Management is therefore entitled to judgment as a matter of law as to this claim. *See, e.g., McCoy*, 492 F.3d at 557.

### C.    ADA and RA Disability Discrimination [Waste Management]

Considering together the ADA- and RA-based claims, *see Kemp*, 610 F.3d at 234,

an employer may not discriminate "against a 'qualified individual with a disability on the bases of that disability,'" *EEOC v. LHC Grp,. Inc.*, 773 F.3d 688, 694 (5th Cir. 2015); *see also* 42 U.S.C. § 12112(a).

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under" the *McDonnell Douglas* burden-shifting analysis by first establishing a *prima facie* case. *Id.* (internal quotation marks omitted). "A *prima facie* case under the ADA requires: (1) that the plaintiff has a disability; (2) that he was qualified for the job; and (3) that the employer's adverse employment decision was a result of his disability." *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam) (citing *LHC Grp.*, 773 F.3d at 694).

Taking first the requirement that the plaintiff has a disability, the ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). And Mr. Williams has asserted that he is not disabled but that Waste Management treated him as if he was disabled, *see* Dkt. No. 81 at 107, thus triggering Section 12102(1)(C).

For purposes of paragraph (1)(C):

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3); *see also Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 447 (5th Cir. 2018) (per curiam) ("Under the amended regarded-as standard, a plaintiff 'needs to plead and prove only that she was regarded as having a physical or mental impairment and not that the actual or perceived impairment substantially limited one or more major life activities.' Therefore, to be 'regarded as impaired,' [Mr.] Williams 'need only show that [his] employer perceived [him] as having an impairment and that it discriminated against [him] on that basis.'" (quoting, respectively, *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016); *Burton*, 798 F.3d at 230; citation and original brackets omitted)).

Mr. Williams has submitted no evidence to meet this standard. As Defendant correctly notes, the summary judgment evidence reflects that, "[o]nce Williams' physician released him to return to work with no restrictions, Waste Management went out of its way to return Williams to his Roll-Off driver position with his same responsibilities, duties, and pay rate." Dkt. No. 80 at 26 (citing Ramirez Decl., ¶¶ 18-30 [Dkt. No. 81 at 5-7]). And, to the extent that Mr. Ramirez suggested that Mr. Williams apply for short-term disability, there is no evidence that Mr. Williams applied for disability prior to his claimed attempt to return to work on July 22, 2013, and the evidence reflects that Mr. Ramirez made this suggestion to Mr. Williams not because he believed that Mr. Williams was impaired from working at that time but because Mr. Williams "had not reported to work" since his doctor cleared him to return to work

weeks before. Dkt. No. 81 at 5-7, ¶¶ 18, 27, & 28; *cf. Williams*, 717 F. App'x at 449 ("[T]he court acknowledged the FMLA leave and short-term disability forms 'may be considered ... as proof of notice to TCCD.' This is evidence suggesting TCCD was aware of her impairments.").

Mr. Williams has therefore not established a prima facie case of discrimination under either the ADA or the RA.

To the extent that Mr. Williams also alleges that Waste Management failed to reasonably accommodate him, "[t]he ADA requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Delaval v. Ptech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (quoting 42 U.S.C. § 12112(b)(5)(A)).

> A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."

*Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)).

In *Neely*, the Fifth Circuit observed that, "though the ADAA makes it *easier* to prove a disability, it does not *absolve* a party from proving one," 735 F.3d at 245, and further noted that, "[u]nlike the wording in termination claims under the ADA, the post-ADAAA language of the ADA regarding accommodation claims continues to use the phrase 'qualified individual with a disability,'" *id.* at 247 (citing 42 U.S.C. § 12112(b)(5)(A)-(B) (2012) (mentioning the phrase "qualified individual with a

disability" twice in relation to failure-to-accommodate claims)).

The summary judgment evidence here does not show that Mr. Williams had a qualifying disability. This showing is bolstered by Mr. Williams's physician's releasing him to return to work with no restrictions and the above analysis regarding Mr. Williams's failure to show that Waste Management regarded him as disabled. *Cf. Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998) ("[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment."); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 381 (5th Cir. 2007) (per curiam) ("[A]n employer is not required to accommodate an employee who it regards as disabled, but rather only those individuals who are actually limited and have requested an accommodation." (citing *Gammage v. W. Jasper Sch. Bd. of Educ.*, 179 F.3d 952, 955 (5th Cir. 1999); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997))).

Mr. Williams has therefore not established a prima facie claim of failure to accommodate under the ADA.

## Recommendation

The Court should deny Defendants' motion to strike [Dkt. No. 90] – but consider the grounds raised therein as objections to Mr. Williams's evidence – grant Defendants' motion for summary judgment [Dkt. No. 79], and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE